## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-CA-01374-SCT

*WILLIAM WAYNE JENKINS*

*v.*

*STATE OF MISSISSIPPI*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/13/95 |
| TRIAL JUDGE: | HON. GEORGE C. CARLSON, JR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | LARRY LITTLE |
| NATURE OF THE CASE: | CIVIL - POST CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 12/11/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 1/2/98 |

**BEFORE SULLIVAN, P.J., SMITH AND MILLS, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

After prior conviction and reversal and remand for a new trial by this Court, on June 1, 1993, William Wayne Jenkins entered a plea of guilty to one count of simple murder and one count of robbery. The DeSoto County Circuit Court accepted Jenkins guilty plea and sentenced him to life imprisonment for the crime of murder and a consecutive fifteen year sentence for the crime of robbery to be served in the custody of the Mississippi Department of Corrections.

On November 3, 1995, Jenkins filed a petition for post-conviction relief in the DeSoto County Circuit Court. In his petition, Jenkins alleged that (1) his guilty plea was not knowingly, intelligently, and voluntarily entered; (2) the trial court exceeded its authority in sentencing him to banishment from DeSoto and Marshall Counties; and (3) he received ineffective assistance of counsel. The trial court summarily denied Jenkins' petition and all relief requested. Jenkins now appeals to this Court from the

denial of his petition for post-conviction relief.

## FACTS

William Wayne Jenkins was originally indicted for the crime of capital murder in February of 1989. Jenkins subsequently entered a plea of not guilty and proceeded to trial on the charge of capital murder while engaged in the commission of the crime of robbery. After trial on the merits, a jury returned a verdict of guilty and sentenced Jenkins to death. Jenkins then appealed his conviction of guilty and sentence of death to the Supreme Court, and this Court reversed the conviction and sentence and remanded the cause to the trial court for a new trial. *Jenkins v. State*, 607 So. 2d 1171 (Miss. 1992).

On June 1, 1993, the day Jenkins was supposed to receive a new trial, Jenkins petitioned the trial court to enter a plea of guilty to the reduced charges of the crime of simple murder and the crime of robbery. After careful questioning by the trial court and determining that the plea was knowingly, intelligently, and voluntarily entered, the DeSoto County Circuit Court accepted Jenkins' plea of guilty and sentenced him to serve life imprisonment for the crime of simple murder and a consecutive fifteen year sentence for the crime of robbery in the custody of the Mississippi Department of Corrections. In addition, the trial court accepted the recommended and agreed banishment of Jenkins from DeSoto County and Marshall County, Mississippi if Jenkins were ever to be released from confinement on parole.

On November 3, 1995, Jenkins filed a petition for post-conviction relief entitled Motion to Vacate Conviction and Sentence in the DeSoto County Circuit Court. In his petition, Jenkins raised the following claims: (1) his guilty plea was not knowingly, intelligently, and voluntarily entered; (2) the trial court exceeded its authority in sentencing him to banishment from DeSoto County and Marshall County, Mississippi; and (3) he received ineffective assistance of counsel because his counsel allowed the trial court to banish him from DeSoto County and Marshall County.

On December 13, 1995, the trial court entered an order denying Jenkins' motion and dismissing his petition for post-conviction relief without an evidentiary hearing. Finding that Jenkins' petition should be summarily dismissed without an evidentiary hearing, the Honorable George C. Carlson, Jr. stated, "a thorough review of the court files, including the transcript of the plea and sentencing hearing, reveals that it is undeniably clear that Jenkins' sworn statements contained in his various PCR documents are 'overwhelmingly belied by unimpeachable documentary evidence in the record', causing this Court to therefore conclude that Jenkins' sworn statements are 'a sham' and that no evidentiary hearing is required." (quoting *Wright v. State*, 577 So. 2d 387, 390 (Miss. 1991)). The trial court stated, "In considering the entire court files . . . which includes, **inter alia**, Jenkins' PCR pleadings and exhibits, all records, correspondence, and transcripts of hearings, and in also considering all prior proceedings had and conducted in this cause, the Court concludes that it appears beyond doubt that Jenkins can prove no set of facts in support of his claims which would entitle him to relief."

Aggrieved, Jenkins now appeals to this Court, citing the following issues:

> **I. WHETHER JENKINS' PLEA OF GUILTY WAS KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY ENTERED.**

**II. WHETHER JENKINS' FIRST, FIFTH, AND FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS AND EQUAL PROTECTION UNDER THE LAW WAS VIOLATED AS A RESULT OF THE TRIAL COURT BANISHING JENKINS FROM DESOTO AND MARSHALL COUNTY, MISSISSIPPI.**

**III. WHETHER JENKINS' RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED.**

**IV. WHETHER THE TRIAL COURT ERRED BY DISMISSING JENKINS PETITION FOR POST-CONVICTION RELIEF WITHOUT AN EVIDENTIARY HEARING.**

**STANDARD OF REVIEW**

This Court has held that when reviewing a petition for post-conviction relief that attacks the voluntariness of the entry of a plea of guilty "our standard of review is well settled: this Court will not set aside findings of a trial court sitting without a jury unless such findings are clearly erroneous." *Schmitt v. State*, 560 So. 2d 148, 151 (Miss. 1990); *see also Reynolds v. State*, 521 So. 2d 914, 918 (Miss. 1988); *Merritt v. State*, 517 So. 2d 517, 520 (Miss. 1987).

**DISCUSSION OF LAW**

**I. WHETHER JENKINS' PLEA OF GUILTY WAS KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY ENTERED.**

When determining the validity of a guilty plea, this Court has held that a "'guilty plea will only be binding if it is voluntarily and intelligently entered.'" *Drennan v. State*, 695 So. 2d 581, 584 (Miss. 1997) (quoting *Banana v. State*, 635 So. 2d 851, 854 (Miss. 1994)). *See, e.g.*, *Boykin v. State*, 395 U.S. 238 (1969); *Alexander v. State*, 605 So. 2d 1170, 1172 (Miss. 1992); *Myers v. State*, 583 So. 2d 174, 177 (Miss. 1991); *Wilson v. State*, 577 So. 2d 394, 397 (Miss. 1991). Rule 8.04(A)(3)[(1)] of the Uniform Rules of County and Circuit Court Practice provides circuit courts with the applicable standard for determining the voluntariness of guilty pleas as follows:

> *Voluntariness.* Before the trial court may accept a plea of guilty, the court must determine that the plea is voluntarily and intelligently made and that there is a factual basis for the plea. A plea of guilty is not voluntary if induced by fear, violence, deception, or improper inducements. A showing that the plea of guilty was voluntarily and intelligently made must appear in the record.

URCCC Rule 8.04(A)(3). Additionally, this Court has held that "[i]n order for a guilty plea to be voluntarily and intelligently entered, a defendant must be advised about the nature of the crime charged against him and the consequences of the guilty plea." *Banana*, 635 So. 2d at 854. Specifically, Rule 8.04(A)(4) of the Uniform Rules of Circuit and County Court Practice provides the following guidelines for trial court judges:

> *Advice to the Defendant.* When the defendant is arraigned and wishes to plead guilty to the offense charged, it is the duty of the trial court to address the defendant personally and to inquire and determine:

That the accused is competent to understand the nature of the charge;

That the accused understands the nature and consequences of the plea,

and the maximum and minimum penalties provided by law;

c. That the accused understands that by pleading guilty (s)he waives

his/her constitutional rights of trial by jury, the right to confront and cross-examine adverse witnesses, and the right against self-incrimination; if the accused is not represented by an attorney, that (s)he is aware of his/her right to an attorney at every stage of the proceeding and that one will be appointed to represent him/her if (s)he is indigent.

URCCC Rule 8.04(A)(4).

In the case sub judice, there can be no doubt that Jenkins' guilty plea was knowingly, intelligently, and voluntarily entered. At Jenkins' guilty plea hearing, the trial court first asked Jenkins questions in order to determine whether he was competent to understand the charge against him, and from Jenkins' responses that he understood what was going on, the trial court was proper in concluding that Jenkins was competent. The trial court then questioned the defendant to determine whether he understood the nature and consequences of his guilty plea in which Jenkins responded in the affirmative. The trial court next had the prosecutor provide an adequate factual basis to support the charges against Jenkins.

The trial court then informed and explained in detail to Jenkins the constitutional rights that he was waiving by pleading guilty, including his right against self-incrimination, his right to trial by a jury, his right to confront and cross-examine adverse witnesses, his right to an attorney at every stage of the proceedings, and his right to an appeal. When asked if he understood that he was waiving all of these rights described by the trial court, Jenkins responded that he did understand the rights being waived. The trial court additionally informed Jenkins of the maximum and minimum penalties provided by law for the crimes he was being charged with. Jenkins once again responded that he understood those penalties. Additionally, the trial court inquired as to whether anyone had threatened, coerced, intimidated, given promises of leniency, or induced Jenkins into pleading guilty, and Jenkins responded in the negative. Thus, it would without a question appear from the record that Jenkins was fully informed of his constitutional rights, waived those rights, and knowingly, intelligently, and voluntarily entered a plea of guilty to the charges against him.

However, Jenkins contends that his guilty plea was not knowingly, intelligently, and voluntarily entered because Jenkins' attorney, but not Jenkins, agreed to the part of his plea agreement and sentencing that dealt with him being banished from DeSoto County and Marshall County, Mississippi in the event that he would be released on parole in the future. In support of his contention, Jenkins cites to the following exchange that took place at the guilty plea hearing:

BY FAMILY MEMBER OF VICTIM: Could it be Desoto (sic) and Marshall County instead of Tate?

BY MR. LITTLE: Desoto (sic) and Marshall rather than Desoto (sic) and Tate?

BY MRS. GUERIERI: Okay.

BY MR. LITTLE: Can we change that in the Order, Your Honor?

BY THE COURT: Yes, sir, I'll change it here in the petition. I saw your (sic) nodding your head, Mr. Jenkins. I take that to mean that you are in agreement with that modification in paragraph 10(b) of the petition setting out the plea agreement . . . .

Additionally, in support of his contention, Jenkins cites to Rule 8.04(B)(3) of the Uniform Rules of Circuit and County Practice which provides:

Defense attorneys shall not conclude any plea bargaining on behalf of the defendant without the defendant's full and complete consent, being certain that the decision to plead guilty is made by defendant. Defense attorneys must advise defendant of all pertinent matters bearing on the choice of plea, including likely results or alternatives.

URCCC Rule 8.04(B)(3).

However, we find that Jenkins contention is without merit and is frivolous. In making this contention, Jenkins intentionally omits a substantial portion of the record to avoid damaging testimony given by him at the guilty plea hearing. The portion of the record used by Jenkins to support his contention but with the language intentionally omitted is as follows:

BY FAMILY MEMBER OF VICTIM: Could it be Desoto (sic) and Marshall County instead of Tate?

BY MR. LITTLE: Desoto (sic) and Marshall rather than Desoto (sic) and Tate?

BY MRS. GUERIERI: Okay.

BY MR. LITTLE: Can we change that in the Order, Your Honor?

BY THE COURT: Yes, sir, I'll change it here in the petition. I saw your (sic) nodding your head, Mr. Jenkins. I take that to mean that you are in agreement with that modification in paragraph 10(b) of the petition setting out the plea agreement, **that instead of the banishment in Desoto (sic) and Tate Counties, it would be Desoto (sic) and Marshall Counties?**

**BY DEFENDANT JENKINS: Yes, sir.**

(emphasis added). In addition, the record reveals later in the guilty plea hearing that Jenkins was again asked the same question by the trial court and gave the same response:

BY THE COURT: I'll recite again the banishment. I did not cover that even though it was discussed in the plea dialogue. Likewise, Mr. Jenkins, you will (sic) banished from Desoto (sic) County and Marshall County, Mississippi. Do you understand that?

BY DEFENDANT JENKINS: Yes, sir.

Thus, Jenkins' contention is without merit because the full record reveals that Jenkins affirmatively responded that he understood the banishment and agreed to the banishment and modification of area

banished from in the case of being granted parole.

As a result, we find that Jenkins' guilty plea was knowingly, intelligently, and voluntarily entered.

### II. WHETHER JENKINS' FIRST, FIFTH, AND FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS AND EQUAL PROTECTION UNDER THE LAW WAS VIOLATED AS A RESULT OF THE TRIAL COURT BANISHING JENKINS FROM DESOTO AND MARSHALL COUNTY, MISSISSIPPI.

Jenkins contends that the trial court denied him due process and equal protection under the law in violation of the First, Fifth, and Fourteenth Amendments of the United States Constitution by banishing him from DeSoto County and Marshall County, Mississippi without justifying its reasoning. Jenkins further contends that the trial court did not have the authority to banish him from DeSoto and Marshall Counties.

However, to the contrary, this Court has held that "[i]nstead of being a matter of right, it is by grace that probation is granted a defendant, and within his sound judicial discretion the trial judge may fix reasonable conditions of parole and probation." *Cobb v. State*, 437 So. 2d 1218, 1221 (Miss. 1983) (citing *Owen v. Kelley*, 681 F.2d 1362 (11th Cir. 1982)). In *Cobb v. State*, the trial court suspended a twelve year sentence and placed Cobb on probation for five years with one of the conditions being that Cobb leave Stone County and stay 125 miles away from Stone County. *Cobb*, 437 So. 2d at 1219. This Court relied on the record from the lower court proceedings to find that "the conditions imposed by the sentencing judge were reasonably related to Cobb's circumstances and his intended rehabilitation." *Id.* at 1220.

The *Cobb* Court further relied on a Georgia case, *State v. Collett*, 208 S.E.2d 472 (Ga. 1974), and a New Jersey case, *In re Buehrer*, 236 A.2d 592 (N.J. 1967), to conclude that the probation condition of banishment did not violate public policy and defeat the rehabilitative purpose. *Cobb*, 437 So. 2d at 1221. The Court noted that "probation is not intended to be without some pain and inconvenience to the probationer. Some amount of punitive aspects of probation serve the public interest as well as the probationer's interest." *Id.*

Finally, the *Cobb* Court held that "[w]e are unable to agree that the conditions complained of violate the constitutional provisions . . ." of the First, Fifth, and Fourteenth Amendments of the Constitution. *Id.* The Court further found that Cobb "voluntarily and knowingly pled guilty and specifically acknowledged his guilt" and agreed to the conditions of his probation by "sign[ing] the judgment underneath the following language: 'I accept the above probation in accordance with the terms thereof.'" *Id.*

In support of his contention, Jenkins relies on the case of *McCreary v. State*, 582 So. 2d 425 (Miss. 1991), for the proposition that the trial court was without authority to banish a defendant from the entire State of Mississippi. In *McCreary*, the trial court imposed a probation-like condition on a defendant while taking his sentencing under advisement whereby the defendant would be banished from the entire State of Mississippi with the exception of two weeks for visitation with his children. *McCreary v. State*, 582 So. 2d 425, 426 (Miss. 1991). In determining whether the trial court had the authority to impose such a condition, the Court stated:

Although the lower court is not at all clear under what authority it proceeds, we can readily conclude that Miss. Code Ann. § 99-15-26 (Supp. 1990) is not applicable. That section allows a practice not unlike that utilized in the lower court. It provides that the circuit court may withhold acceptance of a guilty plea pending completion of certain specified probation-like conditions. Upon successful completion of the court-imposed conditions, the case would then be dismissed.

However, section 99-15-26 does not apply in cases involving crimes against the person. Furthermore, banishment from the State is not one of the authorized conditions which may be imposed.

The only other authority, of which we are aware, is found in Miss. Code Ann. § 47-7-33, -35 (1972 and Supp. 1990). Under those sections, a circuit court may in certain circumstances suspend sentence and place a defendant on probation. Again, however, we have no indication from the circuit court that it was proceeding under this authority, and, given the insufficient record, we will not presume so and legitimate those actions.

Of particular concern is the court's requirement that McCreary leave the State of Mississippi and return only twice a year for the purpose of exercising visitation rights with his children. Under section 47-7-35, the terms and conditions of probation may include a requirement that the defendant "remain within a specified area." We have held this to authorize a court to require a defendant to "remain 125 miles from Stone County" for a period of five years. *Cobb v. State*, 437 So. 2d 1218 (Miss. 1983).

*McCreary*, 582 So. 2d at 427. The *McCreary* Court concluded that "banishment from a large geographical area, especially outside of the State, struggles to serve any rehabilitative purpose, and implicates serious public policy questions against the dumping of convicts on another jurisdiction." *Id.* at 428 (citing *United States v. Abushaar*, 761 F.2d 954, 959-60 (3d Cir. 1985); *Rutherford v. Blankenship*, 468 F. Supp. 1357, 1360-61 (W.D. Va. 1979)).

We conclude that the case sub judice is more analogous to the *Cobb* case in the sense that, unlike *McCreary*, Jenkins was not banished from such a large geographical area as the entire State that would serve no rehabilitative purpose and violate public policy. Jenkins was banished from only DeSoto and Marshall Counties, the counties in which the majority of the victim's family resides in. Thus, Jenkins' banishment obviously serves a rehabilitative purpose, i.e., to prevent potential future altercations between members of the victim's family and Jenkins. It is also apparent that the trial court had the authority to include this condition in the sentencing of Jenkins, for this Court held in *Cobb*: "Instead of being a matter of right, it is by grace that probation is granted a defendant, and within his sound judicial discretion the trial judge may fix **reasonable conditions of parole** and probation." *Cobb*, 437 So. 2d at 1221 (emphasis added) (citing *Owen v. Kelley*, 681 F.2d 1362 (11th Cir. 1982)) .

We believe the condition imposed on Jenkins is reasonable under the circumstances in which Jenkins pled guilty to brutally murdering a resident of DeSoto County with family members spread throughout DeSoto and Marshall Counties. It should also be noted that Jenkins was sentenced to serve a term of life imprisonment and a consecutive fifteen year sentence for the crimes he was convicted of and that the condition involving banishment from DeSoto and Marshall Counties is only

a potential parole condition, a future event that may never take place. Furthermore, the case sub judice bears strong resemblance to the ***Cobb*** case in the sense that Jenkins voluntarily and knowingly entered a plea of guilty and agreed to the parole condition of banishment if he is ever released from confinement on parole. *See **Cobb***, 437 So. 2d at 1221.

Jenkins, on the other hand, alleges that the trial court imposed the banishment condition in his sentencing without providing a reasonable justification for doing so. However, we find that the act of one of the family members of the victim speaking up and requesting that the counties be DeSoto and Marshall instead of DeSoto and Tate provides an obvious reasonable justification for accepting the banishment condition of a future parole.

However, pursuant to Miss. Code Ann. § 47-7-37, a trial court judge may impose conditions of parole and probation for a period not to exceed five (5) years. Miss. Code Ann. § 47-7-37 provides in pertinent part: "The period of probation shall be fixed by the court, and may at any time be extended or terminated by the court, or judge in vacation. Such period with any extension thereof shall not exceed five (5) years . . . ." Miss. Code Ann. § 47-7-37 (1997). Jenkins agreed to the parole condition of banishment from DeSoto and Marshall Counties as part of his plea bargain, and in return, the district attorney recommended a lighter sentence which was accepted by the trial court judge at sentencing. Therefore, if Jenkins is ever released early from prison on parole, the parole condition, agreed to by Jenkins and imposed by the trial court at sentencing, of banishment from DeSoto and Marshall Counties shall not exceed a period of five (5) years.

Additionally, this Court, in ***Temple v. State***, held that a condition of banishment was improperly imposed on a defendant where the entered judgment only contained the pronouncement of sentence and did not include the oral pronouncement of banishment. ***Temple v. State***, 671 So. 2d 58, 59 (Miss. 1996). This Court concluded that the condition was unenforceable because it was not contained in the written judgment entered with the clerk. ***Temple***, 671 So. 2d at 59. However, to the contrary, in the case sub judice the condition of banishment was properly included in the judgment entered with the clerk and signed by the judge on June 8, 1993, and thus, following the logic expressed in ***Temple***, the condition of banishment is enforceable against Jenkins.

Thus, the banishment condition imposed on Jenkins was within the authority of the trial court, serves a rehabilitative purpose, does not violate public policy, and was reasonably justified. However, since the trial court was restricted by statute from imposing conditions of parole in excess of five years, the parole condition of banishment imposed on Jenkins shall not exceed five years if he is ever released from prison early on parole. Otherwise, this issue is without merit.

### III. WHETHER JENKINS' RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED.

Jenkins contends that his counsel was ineffective for allowing the trial court to banish him from several counties as part of the plea agreement and that if counsel had argued this issue, he would not have received the banishment condition in his sentencing. Given the fact that there is no merit to this claim, as explained above, there is no basis for Jenkins' contentions of ineffective assistance of counsel.

### IV. WHETHER THE TRIAL COURT ERRED BY DISMISSING JENKINS PETITION

**FOR POST-CONVICTION RELIEF WITHOUT AN EVIDENTIARY HEARING.**

Jenkins' final contention is that the trial court erred in dismissing his petition for post-conviction relief without granting him the opportunity to prove his claims through an evidentiary hearing. Jenkins alleges that he presented to the trial court claims which were procedurally alive substantially showing denial of a state or federal right.

The Post-Conviction Collateral Relief Act provides the trial court with the following procedure in reviewing an accused's petition for post-conviction relief to determine whether it warrants an evidentiary hearing. Miss. Code Ann. § 99-39-11 provides in part:

> (1) The original motion, together with all the files, records, transcripts and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned.

> (2) If it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief, the judge may make an order for its dismissal and cause the prisoner to be notified.

Miss. Code Ann. § 99-39-11(1)-(2) (Supp. 1997). Miss. Code Ann. § 99-39-9(1) requires that the following pleading information be included in a motion for post-conviction relief:

> (d) A separate statement of the specific facts which are within the personal knowledge of the prisoner and which shall be sworn to by the prisoner.

> (e) A specific statement of the facts which are not within the prisoner's personal knowledge. The motion shall state how or by whom said facts will be proven. Affidavits of the witnesses who will testify and copies of documents or records that will be offered shall be attached to the motion. The affidavits of other persons and the copies of documents and records may be excused upon a showing, which shall be specifically detailed in the motion, of good cause why they cannot be obtained. This showing shall state what the prisoner has done to attempt to obtain the affidavits, records and documents, the production of which he requests the court to excuse.

Miss. Code Ann. § 99-39-11(1)(d)-(e) (1994). Additionally, Miss. Code Ann. § 99-39-19 provides:

> (1) If the motion is not dismissed at a previous stage of the proceeding, the judge, after the answer is filed and discovery, if any, is completed, shall, upon a review of the record, determine whether an evidentiary hearing is required. If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the motion as justice shall require.

Miss. Code Ann. § 99-39-19(1) (1994). Thus, if the pleadings are complete as required above, then the accused is entitled to an evidentiary hearing unless it plainly appears that the accused is not entitled to any relief.

Furthermore, this Court has held that "[a] prima facie claim must be stated by the defendant in his petition to the lower court in order to obtain an evidentiary hearing on the merits of an ineffective assistance of counsel issue." ***Robertson v. State***, 669 So. 2d 11, 13 (Miss. 1996) (citing ***Brooks v.***

*State*, 573 So. 2d 1350, 1353 (Miss. 1990)). "We adhere to the principle that a post-conviction collateral relief petition which meets basic pleading requirements is sufficient to mandate an evidentiary hearing unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Turner v. State*, 590 So. 2d 871, 874 (Miss. 1991). *See, e.g.*, *Robertson*, 669 So. 2d at 13; *Harveston v. State*, 597 So. 2d 641, 643 (Miss. 1992); *Harris v. State*, 578 So. 2d 617, 619 (Miss. 1991); *Billiot v. State*, 515 So. 2d 1234, 1237 (Miss. 1987).

It appears from the record that the trial court followed the proper procedure in denying Jenkins' petition for post-conviction relief, for in dismissing Jenkins petition without an evidentiary hearing, the trial court stated:

> In considering the entire court files in cause numbers CR-89-12-C/D, CR-93-101-C/D, and CV-95-301-C/D, which includes, **inter alia**, Jenkins' PCR pleadings and exhibits, all records, correspondence, and transcripts of hearings, and in also considering all prior proceedings had and conducted in this cause, the Court concludes that it appears beyond doubt that Jenkins can prove no set of facts in support of his claims which would entitle him to relief. Accordingly, Jenkins' Motion For Post-Conviction Relief will be dismissed, with prejudice.

After reviewing the claims raised by Jenkins and finding such claims to be without merit, the trial court correctly concluded that there were no set of facts in support of Jenkins' claims which would entitle him to relief.

Furthermore, Jenkins' petition did not satisfy the basic pleading requirements in order to warrant an evidentiary hearing. Jenkins' petition included only his sworn affidavit and contained no affidavits from other witnesses that would support his claims. *See Campbell v. State*, 611 So. 2d 209, 210 (Miss. 1992) (holding that in a post-conviction relief motion alleging ineffective assistance of counsel failure to provide affidavits of other witnesses did not satisfy basic pleading requirements and denial of petition by trial court without evidentiary hearing was proper). Jenkins' affidavit alone was not sufficient to support his claims, especially where his own affidavit contradicted his sworn testimony at his guilty plea hearing. This Court has continuously held with respect to the requirement of an evidentiary hearing when contradictory affidavits exist as follows:

> This is not to say that an evidentiary hearing is to be ordered every time there are contradictory affidavits. In order for a contested fact to require an evidentiary hearing it must be material. **Moreover, where an affidavit is belied by unimpeachable documentary evidence in the record such as, for example a transcript or written statements of the affiant to the contrary, to the extent that the court can conclude that the affidavit is a sham, no hearing is required.**

*Harris v. State*, 578 So. 2d 617, 620 (Miss. 1991) (emphasis added). *See, e.g.*, *Taylor v. State*, 682 So. 2d 359, 363 (Miss. 1996); *King v. State*, 679 So. 2d 208, 211 (Miss. 1996); *Mowdy v. State*, 638 So. 2d 738, 743 (Miss. 1994); *Smith v. State*, 636 So. 2d 1220, 1224 (Miss. 1994). In the case sub judice, Jenkins provided in his petition only his affidavit in support of his claims, and such affidavit appears to be nothing more than a mere "sham," for it is completely belied by the transcript of his guilty plea hearing.

Thus, we find that since the trial court followed the correct procedure as detailed by the Post-Conviction Collateral Relief Act and this Court's case law, the trial court did not err in dismissing Jenkins' petition without an evidentiary hearing. As a result, this issue is without merit.

## <u>CONCLUSION</u>

We affirm the trial court's summary denial of Jenkins' petition for post-conviction relief because (1) the trial court correctly concluded that Jenkins' guilty plea was knowingly, intelligently, and voluntarily entered; (2) the trial court's imposition of a potential parole condition involving the banishment of Jenkins from DeSoto and Marshall Counties was within its authority, serves a rehabilitative purpose, does not violate public policy, was reasonably justified, and is valid for a five year period from the time of Jenkins' potential early release on parole; (3) the trial court did not err in finding Jenkins' claim of ineffective assistance of counsel was without merit, for underlying substantive claims that Jenkins provided resulted in deficient performance by his counsel were without merit; and (4) the trial court followed the correct procedure to determine whether an evidentiary hearing was warranted and correctly concluded that no set of facts existed that would support Jenkins' claims and entitle him to relief.

**DENIAL OF POST-CONVICTION RELIEF AFFIRMED.**

**LEE, C.J., PRATHER, P.J., PITTMAN, BANKS, McRAE, ROBERTS AND MILLS, JJ., CONCUR. SULLIVAN, P.J., CONCURS IN RESULT ONLY.**

1. Rule 8.04 is the successor to Rule 3.03 of the Uniform Criminal Rules of Circuit Court Practice.