## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00152-COA

**ACE JOE MALLARD**                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                              **APPELLEE**

DATE OF JUDGMENT:              02/11/2022
TRIAL JUDGE:                         HON. CLAIBORNE McDONALD
COURT FROM WHICH APPEALED:     LAMAR COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        MICHAEL ADELMAN
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                                     BY: CASEY BONNER FARMER
NATURE OF THE CASE:            CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                   AFFIRMED - 01/03/2023
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., GREENLEE AND WESTBROOKS, JJ.**

**WESTBROOKS, J., FOR THE COURT**:

¶1.     Ace Joe Mallard appeals from the Lamar County Circuit Court's order denying his motion for post-conviction collateral relief (PCR). Mallard argues the circuit court erred in denying his PCR motion because (1) his statutorily prescribed speedy trial right was violated; and (2) his sentence for second-degree murder should have been twenty years as the original transcript of his sentencing hearing states, despite the forty years that is articulated by the oral pronouncement at the sentencing hearing, the contemporaneous sentencing order, and the amended hearing transcript. After a review of the record, we find no error and affirm the circuit court's denial of his PCR motion.

## FACTS AND PROCEDURAL HISTORY

¶2. In April 2018, Tracy Brown and Mallard were involved in a romantic relationship. Brown's brother characterized Brown and Mallard's relationship as toxic. He described Brown as a victim of domestic violence who was afraid to leave the relationship because Mallard threatened to kill her if she left. Unfortunately, that threat came to pass. On April 27, 2018, Brown went out for the evening with her friends. Mallard did not approve. He repeatedly called Brown to express his objections to her planned outing and followed Brown and her friends in their vehicle. Brown finally exited her friend's vehicle and entered Mallard's vehicle, returning to her home with Mallard where three of her children were present. The next morning, Brown's young son found his mother deceased, lying in a pool of blood, killed by a gunshot wound. Mallard was soon arrested after fleeing to Florida. On May 1, 2018, Mallard returned to Mississippi to face the charges against him.

¶3. On October 8, 2019, Mallard was indicted for the first-degree murder of Brown. On November 5, 2019, Mallard waived his arraignment. His trial was originally set for June 1, 2020 (209 days after his waiver of arraignment). On May 20, 2020, an agreed order to continue was filed due to the COVID-19 pandemic. The box for "yes" was checked next to the statement "[d]efendant waives speedy trial rights or objections from this date until the trial resetting and/or recall date." The case was reset for the docket call on September 21, 2020, and the trial was rescheduled for October 5, 2020.

¶4. A second order to continue was filed on September 24, 2020, at Mallard's request. The reason Mallard gave was that "D[efendant] is incarcerated and counsel has a zoom appointment scheduled for next week to speak to client." Again, the box indicating "yes"

2

was selected to show that Mallard waived his speedy trial objections between the date of the order and the date the trial was rescheduled. After the second continuance, the case was reset for the docket call on October 9, 2020, and the trial was rescheduled for February 24, 2021.

¶5. On November 18, 2020, Mallard pled guilty to the charge of second-degree murder. Under oath, Mallard responded affirmatively when asked if he understood that a guilty plea would waive many of his rights, including his right to appeal based on the right to a speedy trial. Mallard also answered affirmatively when asked if his attorney explained that he had entered an open plea (a plea in which the State made no recommendation for his sentence). The circuit court accepted Mallard's plea of guilty to second-degree murder, and the court made findings of fact that Mallard entered his plea "knowingly, intelligently, freely and voluntarily" and that he was "mentally, physically, psychologically, and educationally competent to enter" his guilty plea.

¶6. The sentencing hearing took place on December 3, 2020. The circuit court began by reminding Mallard that under his open plea the sentencing was left up to the court. The circuit court informed Mallard that the sentence for a charge of second-degree murder could range from twenty to forty years. The court next ordered from the bench that Mallard "spend forty years in the custody of the Mississippi Department of Corrections." Shortly after, the circuit court repeated that Mallard would "serve that forty years day for day without the possibility of parole."

¶7. On the same day, before leaving the courtroom, Mallard signed the order of conviction and sentence, which reflected the sentence in bold letters and all caps as "**FORTY (40)**

**YEARS, DAY FOR DAY, WITHOUT THE POSSIBILITY OF PAROLE**." Mallard did not question or object to this clear statement of his sentence in the written order. When the sentencing hearing transcript was issued, however, "twenty years" had been incorrectly transcribed instead of "forty years" for both of the circuit court's announcements of Mallard's sentence from the bench.

¶8. On May 11, 2021, Mallard timely filed a PCR motion in the circuit court. Mallard alleged two claims for relief: (1) his statutory speedy trial right under Mississippi Code Annotated 99-17-1 (Rev. 2020) was violated; and (2) the order of conviction, which listed a forty-year sentence, conflicted with the sentencing-hearing transcript, which listed a twenty-year sentence, and thus the order should be changed to reflect a twenty-year sentence. The circuit court held an evidentiary hearing on the PCR motion on October 5, 2021.

¶9. During the evidentiary hearing, the State presented as evidence the audio recording made by the court reporter at the December 2020 sentencing hearing. The audio recording clearly captured the circuit court's proclamation of a sentence of forty years both times the sentence was pronounced. Although Mallard characterized this portion of the recording as "scratchy," this Court, when listening to the recording at a sufficient volume, found the word "forty" to be easily discernable.

¶10. The State also produced an affidavit from the court reporter stating that after reviewing her recording of the sentencing hearing, she found two scrivener's errors in her prior transcript. She stated that in both places where "twenty years" was transcribed, "forty years" was the correct language. She submitted an amended transcript with those

4

corrections. In addition, the circuit court judge recalled sentencing Mallard to forty years both times he pronounced the sentence. The judge also recalled watching Mallard, before leaving the courtroom after his sentence was announced, sign the order that stated the sentencing term was forty years. Neither the State nor Mallard called witnesses to support their claims.

¶11. Next, Mallard very briefly discussed his 270-day speedy trial claim, stating that he raised it in the motion and that he had not withdrawn or waived the argument. The circuit court just as briefly stated that when "you enter a plea of guilty, you waive that rule." Mallard's attorney stated that he understood and that he had "explained that to Mr. Mallard." The circuit court then ended the hearing.

¶12. On February 11, 2022, the circuit court issued its order denying Mallard's PCR motion. The circuit court first found that Mallard "waive[d] any objections to speedy trial violations when he entered his guilty plea." The court also found that there was no ambiguity or conflict between the oral pronouncement and the written order of the sentence and that "[Mallard] was aware of his sentence of forty years, and acknowledged it a[t] the sentencing hearing by signing the Order of Conviction and Sentence." The circuit court ruled that both of Mallard's issues were without merit. On February 18, 2022, Mallard appealed the circuit court's decision.

## STANDARD OF REVIEW

¶13. "When reviewing a circuit court's denial or dismissal of a PCR motion, we will only disturb the circuit court's decision if it is clearly erroneous; however, we review the circuit

5

court's legal conclusions under a de novo standard of review." *Tingle v. State*, 285 So. 3d 708, 710 (¶8) (Miss. Ct. App. 2019) (quoting *Williams v. State*, 228 So. 3d 844, 846 (¶5) (Miss. Ct. App. 2017)).

## DISCUSSION

### I.  Mallard's Statutory Speedy Trial Right

¶14.  Mallard argues specifically that his statutory right to a speedy trial under Mississippi Code Annotated section 99-17-1 was violated.[1]  The statute, also called the "270-day rule," states:

> Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.

Miss. Code Ann. § 99-17-1.  The statute specifies that the arraignment is the start of the 270-day calendar.  *Id*.  But "[i]f a defendant waives arraignment, that date is considered day one on the speedy trial calendar." *Walker v. State*, 196 So. 3d 978, 982 (¶17) (Miss. Ct. App. 2015) (quoting *Mayo v. State*, 886 So. 2d 734, 738 (¶17) (Miss. Ct. App. 2004)).  When calculating the total number of days between the day of the arraignment and the date of the trial, each delay is considered separately. *Smith v. State*, 977 So. 2d 1227, 1234 (¶20) (Miss. Ct. App. 2008).  "Delays attributed to the defendant do not count toward the 270-day total." *Id*. at (¶20) (citing *Sharp v. State*, 786 So. 2d 372, 377-78 (¶5) (Miss. 2001)).  Delays include when a defendant requests a continuance or agreed orders of continuance. *Sharp*, 786 So. 2d at 378 (¶7); *Drake v. State*, 800 So. 2d 508, 514 (¶22) (Miss. 2001).

---

[1] Mallard makes no mention of his Constitutional right to a speedy trial, instead raising an issue solely with the right to a speedy trial under section 99-17-1.

¶15. Moreover, our Supreme Court has found that "a guilty plea waives the right to a speedy trial, whether that right is of constitutional or statutory origin." *Rowe v. State*, 735 So. 2d 399, 400 (¶3) (Miss. 1999) (citing *Anderson v. State*, 577 So. 2d 390, 391-92 (Miss. 1991)).

¶16. In the present case, Mallard's guilty plea took place on November 18, 2020 (379 days after his waiver of arraignment). Even so, Mallard's trial was originally set for June 1, 2020 (209 days after his waiver of arraignment on November 5, 2019). This time is well within the statutorily required 270-day time frame. But the trial was continued twice: once by an agreed order and once at Mallard's sole request. These two delays are not counted against the 270-day time frame, as they are both attributable to Mallard. *Sharp*, 786 So. 2d at 378 (¶7); *Drake*, 800 So. 2d at 514 (¶22). In addition, in the two orders for continuances, Mallard explicitly waived any speedy trial claim from the date of the order's issuance until the "trial resetting and/or recall date." According to the second order for a continuance, that time period would have ended on February 24, 2021. The two continuances were the only delays between Mallard's waiver of arraignment and the date of his guilty plea in November 2020. Thus, only 209 days are counted toward the 270-day statutory deadline, and no violation of the statute has occurred.

¶17. Furthermore, at his plea hearing, Mallard testified under oath that he understood that a guilty plea would waive many of his rights, including the right to a speedy trial. This Court has held that "[s]olemn declarations in open court carry a strong presumption of verity." *Hill v. State*, 60 So. 3d 824, 828 (¶12) (Miss. Ct. App. 2011) (quoting *Baker v. State*, 358 So. 2d

401, 403 (Miss. 1978)). For the foregoing reasons, Mallard's statutory speedy trial claims fail because (1) all delays after the trial was originally set were attributable to him and did not count toward the statutory 270-day deadline; and (2) he acknowledged that he waived his right to a speedy trial when he pled guilty. *Smith*, 977 So. 2d at 1234 (¶20); *Rowe*, 735 So. 2d at 400 (¶3).

## II. Scrivener's Errors

¶18. Mallard next asserts that his sentence should be reduced to twenty years because of the conflict between the original sentencing hearing transcript and the sentencing order. To this end, Mallard has cited cases that direct a court's action in the event of a conflict or ambiguity between written order and oral pronouncement. *See, e.g.*, *Boutwell v. State*, 847 So. 2d 294, 295-96 (¶¶6-8) (Miss. Ct. App. 2003); *Temple v. State*, 671 So. 2d 58, 59 (Miss. 1996). In the case before us, however, there is no conflict or ambiguity between the circuit court's oral pronouncement and the written sentencing order.

¶19. In *Collins v. State*, 879 So. 2d 1112 (Miss. Ct. App. 2004), a factually similar case, Collins filed a PCR motion when the initial transcript of the guilty plea hearing contained a scrivener's error that stated Collins should serve a two-year sentence instead of the ten-year sentence reflected on the final judgment. *Id*. at 1113 (¶¶3-4). In that case, an affidavit from the court reporter, along with a corrected transcript, established that the circuit court judge announced a ten-year sentence from the bench. *Id*. This Court found that "with one exception, all the documentation in the record reveals that Collins received a ten year sentence," and "[t]hat exception was corrected to state what actually occurred." *Id*. at (¶5).

We determined that a scrivener's error had occurred in the transcript, and scrivener's errors are subject to correction. *Id*. at (¶4).

¶20. In the present case, the record also establishes the original transcript contained scrivener's errors. Just like in *Collins*, the court reporter reviewed her recording and submitted an affidavit stating that Mallard received a forty-year sentence from the bench on the day of his sentencing hearing. She submitted a corrected amended transcript to reflect the forty-year sentence. Additionally, the circuit court judge recalled the pronouncement of the sentence, his observing Mallard sign the written order proclaiming the forty-year sentence (not a twenty-year sentence) without objection. Even more compelling, in the present case, there is an audio recording of the sentencing hearing. Here, with the court reporter's audio recording of the sentencing hearing, the circuit court indisputably can be heard pronouncing a forty-year sentence two times. This overwhelming amount of evidence supports the circuit court's determination that the original transcript contained nothing more than a scrivener's error, and scrivener's errors in transcripts are subject to correction. *Id.*

## CONCLUSION

¶21. Because Mallard clearly fails to establish any reversible error regarding his claims, we affirm the circuit court's order denying his PCR motion.

¶22. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**